

**SO ORDERED,**

Judge Selene D. Maddox

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

**IN RE: KENNETH BROWN HOOD**                    **CASE NO.: 16-14511-SDM**

**DEBTOR**                                        **CHAPTER 12**

**MEMORANDUM OPINION AND ORDER APPROVING IN PART PLAINTIFF'S**
**APPLICATION FOR COMPENSATION**

This matter is before the Court on the *Application for Allowance of Compensation for Violation of the Automatic Stay* (the "Application") (Dkt. #801), filed by Creditor (and Plaintiff) Helena Chemical Company ("Helena"). In the Application, Helena seeks to recover costs and attorney's fees incurred in prosecuting a violation of the automatic stay under 11 U.S.C. § 362 by the Third-Party Defendants: the Estate of Odelle Hood, her daughter Mary Lou Dilworth ("Mary Lou"), and Hood Family Farm, LLC.[1] The Defendants filed a Response (Dkt. #807) and a

---

[1] While Helena filed the Application in the underlying bankruptcy case, it relates to its prosecution of the adversary proceeding in Adv. Pro. No. 19-01065. This adversary proceeding is also related to several other bankruptcy cases and adversary proceedings. The Debtor's brothers filed for bankruptcy in the following cases: William Cary Hood, Case No. 16-14506; Howard Allen Hood, Case No. 16-14509; and Curtis G. Hood, Case No. 16-14507. Helena filed similar complaints for violation of the automatic stay against William Hood (Adv. Pro. No. 21-01008) and

supporting Memorandum Brief (Dkt. #809), arguing that Helena is not entitled to recover attorney's fees under § 362(k)(1) because: (1) Helena failed to establish it suffered damages distinct from the attorney's fees and costs incurred in pursuing this action; and (2) Helena is not an "individual" within the meaning of § 362(k)(1) and is therefore barred from recovery under that statute. Helena then filed a Reply (Dkt. #810) and Brief in Support (Dkt. #811), asserting that: (1) under the plain language of § 362(k)(1), recovery of attorney's fees and costs does not depend on a showing of separate damages; and (2) even if Helena is not an "individual" for purposes of § 362(k)(1), the Court may nevertheless award attorney's fees and costs under its civil contempt authority pursuant to § 105(a).

The Court held a hearing on the Application on September 26, 2025, and afterwards, took the matter under advisement. After considering the parties' briefs and arguments, the Court finds that the plain language of § 362(k) mandates an award of actual damages, including costs and attorney's fees, upon a finding of a willful violation of the automatic stay. As discussed further below, the Defendants' argument that recovery of attorney's fees and costs requires proof of separate damages finds no support in the statute's text or in relevant caselaw. The Court further concludes that while Helena is not an "individual" entitled to relief under § 362(k)(1), it is nevertheless appropriate to award Helena its attorney's fees and costs under § 105(a), through the imposition of civil contempt sanctions. Such sanctions are warranted because the Defendants willfully violated the automatic stay, which operates as a self-executing injunction and is deemed

---

Howard Hood (Adv. Pro. No. 21-01007), as well as complaints for determination of estate assets and injunctive relief in the following proceedings: Kenneth Hood (Adv. Pro. No. 19-01010); William Hood (Adv. Pro. No. 19-01011); and Howard Hood (Adv. Pro. No. 19-01012). The Court stayed those proceedings pending resolution of this adversary proceeding.

an order of this Court. Accordingly, Helena is entitled to recover the reasonable attorney's fees and costs incurred in prosecuting that violation.

## I. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by Chief District Judge L. T. Senter and dated August 6, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate). All parties have consented to entry of final orders and judgment by this Court. See *Pretrial Order* (A.P. Dkt. #110).

## II. FACTS AND PROCEDURAL HISTORY

Between February 2019 and April 2021, Helena initiated a series of related adversary proceedings against the Estate of Odelle Hood, her daughter Mary Lou, and Hood Family Farm, LLC.[2] Helena alleges that Mary Lou violated the automatic stay when, acting under a power of attorney granted by her mother, she transferred Odelle's interest in the real property known as the "Home Place" in fee simple in June 2019. As detailed in the Court's Summary Judgment Opinion (Dkt. #159 in A.P. No. 19-01065-SDM), the Debtors and their siblings held remainder interests in the Home Place under the Will of H. Brown Hood, their father and Mary Lou's. In that opinion, the Court concluded that although the transfer constituted a willful violation of the automatic stay, it should not be invalidated. While the general rule holds that a transfer made in violation of the automatic stay is voidable, the Court found that remedy inappropriate here because the bankruptcy estate was simply stripped of a future possessory interest. Put another way, the liable parties did

---

[2] Odelle Hood passed away on December 12, 2020. Following her death, her estate was substituted as a defendant in this adversary proceeding. See *Order Denying in Part Motion for Substitution of the Parties* (Dkt. #88 in A.P. No.: 19-01065-SDM).

not transfer real property that was, itself, property of the bankruptcy estate. The Court also noted the absence of any legal authority requiring the invalidation of transfers involving vested remainder interests under these circumstances. As a result, the only remaining issues in this adversary proceeding are the damages Helena sustained because of the transfer and the attorney's fees incurred in prosecuting the stay violation.

On June 16, 2025, the Court conducted a trial to determine what damages, if any, were appropriate for the Defendants' violation of the automatic stay.[3] At trial, the parties focused their arguments exclusively on the value of the Home Place and the value of the Debtors' interests therein. As discussed in the Court's Interim Order on Damages (the "Interim Order") (Dkt. #114 in A.P. No. 21-01008-SDM), Helena presented the testimony of expert witness Dr. Russell Black. Dr. Black testified that the Debtors' remainder interests lacked realizable market value because such interests could not be sold independently. The Court ultimately concluded that although Helena failed to offer sufficient evidence of the value of the Debtors' remainder interests to support an award of actual damages, Helena remained entitled to attorney's fees under § 362(k)(1) in an amount to be determined. The Court directed Helena to file the appropriate application for compensation within ten days of entry of the Interim Order.

---

[3] The parties submitted the following as evidence: Chancery Court of Bolivar County, General Docket for Case No. 8447 (Ex. P1); The Will of H. Brown Hood (Ex. P2); Odelle Hood's General Power of Attorney (Ex. P3); The Quitclaim Deed to Hood Family Farms, LLC (Ex. P4); The Resume of Dr. Russell Black (Ex. P5); A Market Value Appraisal from December 31, 2016 (Ex. P8); A Market Value Appraisal from June 25, 2019 (Ex. P9); A Market Value Appraisal from May 16, 2023 (Ex. P10); Holcomb Law Group Attorney's Fees and Summary of Fees (Ex. P12); The deposition of Dr. Russell Black (Ex. D1); The deposition of Lucy Speakes (Ex. D2); The Voluntary Petition of Howard Hood (Ex. H1); The Voluntary Petition of Kenneth Hood (Ex. H2); The Order Confirming Chapter 12 Plan of Howard Hood (Ex. H3); The Order Confirming Chapter 12 Plan of Kenneth Hood (Ex. H4).

On July 28, 2025, Helena filed its Application seeking $96,797.00 in attorney's fees and expenses.[4] On or about August 25, 2025, the Defendants filed their *Response* (Dkt. #807 in Case No. 16-14511-SDM) and *Memorandum in Opposition* (the "Brief") (Dkt. #809 in Case No. 16-14511-SDM).[5] In their Response and Brief, the Defendants argue that Helena is not entitled to attorney's fees because it failed to establish the value of the Debtors' remainder interests in the Home Place and, therefore, did not suffer an "injury" within the meaning of § 362(k)(1). The Defendants further contend that, because the Court found Helena failed to prove the value of those interests at trial, their conduct amounted to "nothing more than a technical violation (arguably not even that)"—a violation they assert does not support an award of damages under the plain language of § 362(k)(1). See Defendants' Mem. Opp. to Application ¶ 5. Finally, the Defendants argue that Helena is not entitled to relief under § 362(k)(1) because it is not an "individual" within the meaning of that provision.

On September 19, 2025, Helena filed its *Reply to Defendants' Response* (the "Reply") (Dkt. #810 in Case No. 16-14511-SDM) and *Memorandum in Support of Reply* (the "Reply Brief") (Dkt. #811 in Case No. 16-14511-SDM). In its Reply and Reply Brief, Helena contends that attorney's fees constitute part of the damages recoverable under § 362(k)(1), even where the underlying "injury" is of inconsequential or nominal value. Helena also argues that the violation was not merely "technical"; but even if it were, it became a willful violation when the Defendants, despite

---

[4] Helena filed identical *Application(s) for Compensation for Violation of the Automatic Stay* in the other two related bankruptcy cases, Howard Hood, Case No. 16-14509 (Dkt. #662) and William Hood, Case No. 16-14506-SDM (Dkt. #526) on that same day.

[5] Defendants filed identical *Response(s) to Helena's Application for Compensation* and *Memorandum(s) in Opposition to Helena Chemical Company's Application for Compensation* in William Hood, Case No. 16-14506-SDM (Dkt. #533 and #534), and Howard Hood, Case No. 16-14509-SDM (Dkt. #670 and #669) on September 11, 2025.

knowing of the automatic stay, refused to return the quitclaim deed transferring the Home Place. Finally, Helena asserts that its status as a corporate entity does not preclude recovery of attorney's fees and costs, because the Court may award such relief under its civil contempt authority pursuant to § 105(a). The Court held a hearing on September 26, 2025, during which the parties reiterated the positions presented in their briefing.

### III. DISCUSSION

Having laid out the relevant background and the parties' positions, the Court now turns to the legal issues raised in the Application and the briefs submitted in support and opposition. The Court will address three primary issues. First, the Court will consider whether the Defendants' conduct constituted a willful violation of the automatic stay or merely a technical one. Second, the Court will evaluate whether attorney's fees are recoverable under § 362(k)(1) in the absence of separate, quantifiable damages. Finally, the Court will address whether Helena's status as a corporate entity bars it from recovering attorney's fees and costs under § 362(k)(1).

#### A.  The Defendants Willfully Violated the Automatic Stay

The Defendants argue that their conduct constituted a "merely technical" violation of the automatic stay, citing Helena's failure to prove the value of the Debtors' remainder interests. Helena responds that even a technical violation can mature into a willful one where the violator fails to cure the violation after receiving notice. The Court need not examine this issue at length, as it has already determined that the Defendants' conduct was willful under the three-part test articulated in *In re Chesnut*, 422 F.3d 298, 301 (5th Cir. 2005). See *Memorandum Opinion and Order Denying as Moot Defendants' Motion for Summary Judgment and Granting in Part Plaintiff's Motion for Summary Judgment*, (A.P. Dkt. #159). In short, the Defendants cite no

authority defining a "technical" violation to support their assertion that the stay violation here was "nothing more than a technical violation (arguably not even that)." Instead, they argue repeatedly that the violation was "technical" based solely on Helena's failure to quantify the value of the remainder interests. At the hearing, Helena offered legal authority defining a "technical" violation as one that occurs without notice of the bankruptcy or the automatic stay. See, e.g., *In re Valentine*, 648 B.R. 324, 332 (Bankr. E.D. Cal. 2022); *In re Henley*, 480 B.R. 708, 798 (Bankr. S.D. Tex. 2012) (holding that a violation is technical where the actor lacked notice of the bankruptcy filing). Moreover, in *In re Campbell*, 649 B.R. 831, 839 (Bankr. S.D. Miss. 2023), the court rejected the same argument advanced by the Defendants here: that the absence of actual damages transforms a stay violation into a technical one.

This Court finds no legal basis for the Defendants' definition of a "technical" violation.[6] Their argument appears to rely on *In re Frasier*, 613 B.R. 271, 276 (Bankr. W.D. Wis. 2020), which states that "damages are not typically awarded for inadvertent or technical violations of the stay." But *Frasier*, like the other authorities cited by Helena, defines a "technical" violation as one committed without knowledge of the stay. Here, the Defendants conceded at the March 24, 2022 summary judgment hearing that Mary Lou was aware of the bankruptcy filings at the time of the transfer. Accordingly, the violation was, and remains, willful.

---

[6] Helena also argued that a technical violation can mature into a willful one where the defendant has notice of the stay and fails to cure their violation. See *In re Will*, 303 B.R. 357 (Bankr. N.D. Ill. 2003) (holding creditor liable for costs and attorney's fees under § 362(k) because creditor refused to cure its technical violation). See also, *In re Weatherford*, 413 B.R. 273 (Bankr. D.S.C. 2009), *In re Harrison*, 599 B.R. 173 (Bankr. N.D. Fla. 2019), and *In re Taylor*, 190 B.R. 459 (Bankr. S.D. Fla. 1995). Because this Court stands by its previous decision that Defendants' violation of the stay was in fact willful under Fifth Circuit precedent, the Court need not address this argument.

**B.  Costs and Attorney's Fees are Actual Damages under 11 U.S.C. § 362(k)(1)**

The Court is next tasked with determining whether actual damages are a prerequisite for recovery of attorney's fees under § 362(k)(1) as these Defendants contend. Section 362(k)(1) provides that an "individual injured by any willful violation of a stay . . . *shall recover* actual damages *including* costs and attorney's fees. . . ." 11 U.S.C. § 362(k)(1) (emphasis added). Thus, under the plain language of the statute, costs and attorney's fees are included in the measure of recoverable damages. Nevertheless, the Defendants argue that the words of § 362(k)(1) implicitly require Helena to prove an "injury" in the form of separate damages before costs and attorney's fees can be recovered. From their perspective, because Helena failed to prove value in the remainder interests at issue, it failed to meet this alleged "standard" in § 362 and is precluded from recovering attorney's fees.[7]

A Mississippi bankruptcy court has previously rejected a similar argument raised by a creditor who was found to have committed a willful violation of the automatic stay. See *In re*

---

[7] Also perplexing to the Court, the Defendants continue to argue that the Hood brothers' vested remainder interests were not property of the estate under § 541(a)(1). Property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *In re Burgess*, 438 F.3d 493, 496 (5th Cir. 2006). Courts have consistently found that vested remainder interests constitute property of the estate. See *In re Amaral*, 550 B.R. 1, 12 (Bankr. D. Mass. 2016). Here, the Defendants essentially argue, as they have throughout this proceeding, that the interests lacked value and thus could not be estate property. They cite *City of Chicago v. Fulton*, 592 U.S. 154, 156–57 (2021), for the proposition that property of inconsequential value need not be turned over and, by analogy, argue that no damages are recoverable under § 362(k)(1). But in *Fulton*, the Supreme Court expressly declined to graft § 542(a)'s exception into § 362. See *id.* at 159 ("There is no textual basis for reading [§ 362] to include § 542's exception."). Even more, *Fulton* involved vehicles repossessed prepetition; thus, not estate property under § 541. *Id.* at 157. In contrast, the Debtors here held their vested remainder interests at the time of filing, making those interests part of the bankruptcy estate. Helena's failure to quantify their value does not change that conclusion. For further analysis, see the Court's Summary Judgment Opinion.

*Campbell*, 649 B.R. at 839. Like the instant case, the party harmed by the stay violation there failed to prove he suffered damages separate from his attorney's fees and expenses in prosecuting the violation. *Id*. The violating creditor argued that § 362(k)(1) implicitly required the debtor to prove an "injury" in the form of separate damages before costs and attorney's fees were recoverable, and failure to meet that standard would render the violation merely technical. *Id*. There, like the Defendants here, the creditor contended that the debtor failed to meet this alleged standard under § 362(k)(1) and, thus, could not recover his attorney's fees for a mere technical stay violation. *Id*.

In rejecting that argument, the court opined that the term technical, in the context of an automatic stay violation, was a term of art which refers to a violation without knowledge of the bankruptcy. *Id*. (citing *In re Henley*, 480 B.R. 708 (Bankr. S.D. Tex. 2012)). Because the violating creditor had knowledge of the debtor's bankruptcy, the court concluded that the violation was not merely technical, and the debtor was entitled to recover damages. *Id*. Looking at whether the debtor could recover his attorney's fees absent proof of separate damages, the court reasoned that the words "shall recover" indicate Congress intended the award of actual damages, costs, *and* attorney's fees be mandatory upon a willful violation of the stay. *Id*. The court further explained that to require a debtor to prove an injury other than attorney's fees before those fees are recoverable would effectively strike the word "including" from the statute. *Id*. See also, *Duby v. United States*, 451 B.R. 664, 674 (B.A.P. 1st Cir. 2011) (explaining that the plain language of § 362(k)(1) expressly states that attorney's fees are actual damages); *Parker v. Credit Cent. S., Inc.*, 634 F. App'x 770, 774 (11th Cir. 2015) (rejecting the creditor's argument that debtor was not entitled to award of attorney's fees because he did not suffer an "injury" other than incurring those fees).

To support their argument that this implicit standard exists, the Defendants offer *In re Koeberer*, 632 B.R. 680 (9th Cir. B.A.P. 2021), a Ninth Circuit BAP decision on an action for damages and attorney's fees pursuant to § 362(k). In that case, the California bankruptcy court denied the debtors' attorney's fees and costs because the creditor's violations were minor and did not support an award of attorney's fees as the debtors' failed to prove separate damages. *Id*. In vacating the bankruptcy court's decision on attorney's fees, the Ninth Circuit opined that no type of automatic stay violation, even those which may seem minor based on a lack of proof of separate damages, automatically refutes the obligatory language of § 362(k)(1). *Id*.

Because the court could not determine the reasonableness of the attorney's fees requested from the record, it remanded the case. In dicta, the court stated that it could see the bankruptcy court finding that a portion of the debtors' attorney's fees were reasonable or that they were not. *Id*. The Defendants latch on to the second part of this dicta to support their argument, ignoring the fact that attorney's fees in the amount of $2,460.00, which reflected the six hours of work the debtors' attorney spent analyzing the stay violation, were awarded to those debtors on remand. *Id*; See *California Bank of Commerce Appellant v. Koeberer*, 2022 WL 17825124, *5 (Bankr. N.D. Cal. 2022) (explaining that the bankruptcy court awarded debtors $2,460.00 in attorney's fees and $0 in costs on remand).

Based on the Court's review of the applicable law, attorney's fees are expressly included in the actual damages recoverable by a party harmed by a willful violation of the automatic stay under the plain language of § 362(k)(1). Congress's use of the words "shall recover" indicates that the legislature intended the award of damages, costs, *and attorney's fees* be mandatory.  Just like in the cases discussed above, this Court refuses to effectively strike the word "including" from the

statute by requiring Helena to prove an injury other than attorney's fees before such fees are recoverable. Further, despite Defendants' arguments to the contrary, Helena does claim an injury here: it has incurred court costs and attorney's fees to protect the automatic stay and to prosecute the Defendants' willful violation of it. In other words, the act of violating the automatic stay is the injury itself. The Court agrees with the Ninth Circuit that no type of automatic stay violation, even those that seem minor, can automatically refute the obligatory language of the statute. Despite Defendants' quarrels with Helena's lack of sufficient proof of actual damages, the Court will not ignore § 362(k)(1)'s mandatory language. *See* ANTONIO SCALIA & BRYAN A. GARNER, READING THE LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012) ("If possible, every word and every provision is to be given effect," and "none should be ignored."). Based on the plain language of the statute, Helena is permitted to recover its reasonably incurred attorney's fees in prosecuting this violation.

### C. Helena's Corporate Status Does not Bar it from Recovering Reasonable Costs and Attorney's Fees.

Finally, this Court is tasked with determining whether Helena's corporate status precludes it from recovering costs and attorney's fees incurred in prosecuting this automatic stay violation. Based on review of the applicable law, further discussed below, the Court finds that Helena's corporate status is no bar to recovery in the end. Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees." 11 U.S.C. § 362(k)(1). The Defendants' final argument is that Helena is barred from recovering attorney's fees under § 362(k)(1) because it is not an "individual" within the meaning of the statute. Helena responds by contending that the Court has an alternative basis to award Helena's attorney's fees and costs—the general contempt power under § 105(a).

This Court and, more importantly, the Fifth Circuit has not yet addressed the issue of whether the word "individual" within § 362(k)(1) extends to entities such as Helena. As such, the Court will begin by addressing the meaning of "individual" in the statute as it applies to corporate creditors, then turn to the authority to award fees under § 105(a).

    *i. The meaning of the word "individual" within § 362(k)(1).*

As discussed in the section above, § 362(k)(1) mandates the recovery of actual damages, including costs and attorney's fees, for "any individual injured by any willful violation" of the automatic stay. The Defendants here argue that Helena, a corporate entity, is not an individual and, thus, cannot recover under § 362(k)(1). While Defendants failed to cite any legal support for this argument, the Court recognizes that the Code does not provide a definition of the term "individual" and there is a split of authority on whether the § 362(k)(1) remedy extends to corporations and other entities.

Two courts have construed the word "individual" in § 362(k) to include corporate and other artificial entities.[8] In the leading case *Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 293 (4th Cir. 1986), the Fourth Circuit noted that the legislative history of § 362 demonstrates that the automatic stay was defined to broadly protect all debtors at its enactment in 1978. To the court, it is unlikely that Congress intended the remedy for a willful violation of the automatic stay of § 362 to be available only to natural persons as opposed to corporations or other like entities. *Id*. Concluding that a narrow construction of the word "individual" would defeat the main purpose of the statute, the court held that the statute included a corporate debtor. *Id.* The

---

[8] The Fourth and Third Circuit decisions discussed in this paragraph interpret the term "individual" as used in § 362(h). Following the enactment of BAPCPA, former § 362(h) was renumbered as § 362(k), with no substantive change to the provision's text or meaning.

Third Circuit subsequently followed this holding in the 1990 case *In re Atl. Bus. & Cmty. Corp.*, 901 F.2d 325, 328 (3d Cir. 1990), concluding § 362(k)'s remedy is applicable to a corporate debtor. Notably, the Third Circuit did not provide its own reasoning for holding that way, merely citing the Fourth Circuit's holding in *Budget Services Co.*

Other courts have strictly construed the word "individual" in § 362(k) to only apply to natural persons. For example, the Second Circuit, applying principles of statutory construction laid out in *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235 (1989), held that the word "individual" in § 362(k)(1) was limited to natural persons and did not include corporations. *In re Chateaugay Corp.*, 920 F.2d 183 (2d Cir. 1990). The Court reasoned that the Code defines "person" to "include [] individual, partnership, and corporation," and noted that rights and duties are allocated throughout the Code in some instances to "individuals" and others to "persons," making it clear that Congress used the "individual" rather than "person" to mean natural person. *Id*. at 184.

Addressing the Fourth Circuit's liberal construction of "individual" in *Atl. Bus. & Cmty. Corp.*, the court criticized the Fourth Circuit's analysis for ignoring that subsection (k) of § 362 was added to the Code six years after the rest of § 362 was enacted. *Id*. at 186.  The court further pointed out that § 362(k) was enacted as part of the "Consumer Credit Amendments" that consisted of numerous additions to the Code related only to "individuals," further suggesting that Congress meant these measures to benefit only natural persons. *Id*. (citing Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, Title III Amendments to Title 11 of the United States Code, Subtitle A—Consumer Credit Amendments, § 304, 98 Stat. 333, 352 (1984)). Ultimately, the Second Circuit concluded that the corporate debtor was not entitled to damages under § 362(k) but would need to proceed for contempt sanctions under § 105. *Id*. at 187.

Four other circuits hold that the term "individual" does not include corporations or other artificial entities including a trustee. See *Goodman v. Knight*, 991 F.2d 613, 618-20 (9th Cir. 1993) (holding that the term "individual" does not apply to corporate debtors); *In re* Pace, 67 F.3d 187 (9th Cir. 1995) (holding that a trustee is not an "individual" for purposes of § 362(k)); *In re Jove Eng'g, Inc.*, 92 F.3d 1539, 1549-53 (11th Cir. 1996) (holding that under § 362(k), the term individual does not apply to corporate entities); *In re Just Brakes Corp. Sys., Inc.*, 108 F.3d 881, 884-85 (8th Cir. 1997); and *In re Spookyworld, Inc.*, 346 F.3d 1, 8 (1st Cir. 2003).[9] Although the Fifth Circuit has yet to directly rule on this issue, the majority of lower courts within this circuit have similarly held that corporations and other artificial entities cannot recover under § 362(k). *In re Elcoteq, Inc.*, 521 B.R. 189, 204 n. 8 (Bankr. N.D. Tex. 2014) (citing *In re San Angelo Pro Hockey Club, Inc.*, 292 B.R. 118, 124 (Bankr. N.D. Tex. 2003); see also *In re Amberjack Interests, Inc.*, 326 B.R. 379, 385 n. 1 (Bankr. S.D. Tex. 2005) (explaining that a trustee acting on behalf of the estate of a debtor cannot be considered an "individual" for purposes of § 362(k)).

Despite a lack of express resolution on this issue by the Fifth Circuit, its decision in *St. Paul Fire & Marine Insurance Co. v. Labuzan*, 579 F.3d 533, 543 (5th Cir. 2009) provides some guidance. There, the Fifth Circuit concluded that individuals acting in their capacity as pre-petition creditors of a debtor corporation had standing to pursue damages under § 362(k) of the Code. *Id*. at 545. The Court further held that the same individuals lacked standing to pursue the remedy under § 362(k) when acting in their capacity as partners of the debtor corporation. *Id*. In doing so,

---

[9] Like the Fourth and Third Circuit decisions cited in the previous paragraph, each of these decisions discussed in this paragraph interpret the term "individual" as used in § 362(h). Following the enactment of BAPCPA, former § 362(h) was renumbered as § 362(k), with no substantive change to the provision's text or meaning.

the Fifth Circuit cited the Ninth Circuit's decision in *Goodman*, 991 F.2d at 618, noting that the

Ninth Circuit's view on standing under § 362(k) was "consistent with our circuit's jurisprudence."

*St. Paul Fire*, 579 F.3d at 543.

Importantly, the Fifth Circuit found in a recent decision that the term "individual debtor,"

when used in §§ 523(a) and 1192 of the Bankruptcy Code includes both natural persons and

corporate entities. *Matter of GFS Industries, L.L.C.*, 99 F.4th 223 (5th Cir. 2024). In *GFS

Industries*, the Fifth Circuit interpreted the interplay between § 523(a) and § 1192(2). There, the

court rejected the hyper-literal reading of "individual debtor" in § 523(a) advanced by the corporate

debtor and adopted by the lower court, holding that both individual and corporate Chapter 11

Subchapter V debtors are subject to the discharge exceptions of that section. The court emphasized

that § 1192 governs discharging debts of a "debtor," which the Bankruptcy Code defines as

including both individual and corporate debtors. Focusing on statutory structure, the court

recognized that other Code provisions, including those governing traditional Chapter 11

proceedings, explicitly limit discharges to "individual" debtors, whereas § 1192 simply provides

dischargeability for "the debtor." Ultimately, the court concluded that § 1192 subjects both

corporate and individual Subchapter V debtors to the categories of discharge exceptions listed in

§ 523(a). This interpretive approach suggests to this Court that the Fifth Circuit may prefer to avoid

narrow readings of "individual" within the Code.

After review of the caselaw surrounding this issue, most circuit courts and lower courts

dealing with this issue agree that the term "individual" within § 362(k) is limited to natural persons.

The Court is of the opinion that, while the Fifth Circuit has yet to expressly rule on this issue, the

majority view gleaned from the cases discussed above is persuasive. In line with the majority view,

the Court finds that the term "individual" within § 362(k)(1) does not extend to entities and corporations like Helena. As such, it is not appropriate to award Helena's reasonable costs and attorney's fees under § 362(k)(1). Nevertheless, this Court has the authority to award Helena's reasonable costs and attorney's fees pursuant to the Court's general contempt power under § 105(a) and will do so as explained further below.

ii. *The Court's contempt power under § 105(a)*

Despite the lack of clarity surrounding whether the word "individual" under § 362(k)(1) extends to an entity other than a natural person, Helena is not left without a remedy. Section 105(a) provides this Court with the authority to impose civil contempt sanctions to compensate for damages sustained due to a willful violation of the automatic stay. As Helena argues, § 105(a) provides an alternative basis to award attorney's fees. At the hearing, the Defendants argued that Helena failed to raise this in its Complaint and should be barred from raising it now. While the Court is sympathetic to Defense counsel's lack of preparation on this issue, this argument wholly ignores the plain language of § 105(a). See 11 U.S.C. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."). The Court will now address whether we may award Helena's costs and attorney's fees pursuant to this contempt power.

In addition to its power under § 362 of the Bankruptcy Code, bankruptcy courts possess inherent contempt power to address automatic stay violations, including the power to impose sanctions. *In re Wilson*, 610 B.R. 225, 279 (Bankr. N.D. Tex. 2019). Section 105(a) authorizes the Court to issue orders and judgments that are "necessary or appropriate" to carry out the provisions

of the Code. 11 U.S.C. § 105(a). Civil contempt sanctions can serve to ensure compliance with the automatic stay or to compensate for losses or damages sustained because of a willful stay violation. See *In re San Angelo Pro Hockey Club, Inc.*, 292 B.R. 118, 124 (Bankr. N.D. Tex. 2003), *American Airlines Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000), and *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). Indeed, the Fifth Circuit recognizes bankruptcy courts' inherent power to impose sanctions against a party whose conduct involves bad faith or willful abuse of process. *In re Carroll*, 850 F.3d 609, 613 (5th Cir. 1997). The Fifth Circuit has also explicitly acknowledged that a court may invoke its § 105(a) civil contempt powers to compensate non-debtors for damages resulting from willful automatic stay violations. *In re Cleveland Imaging & Surgical Hosp., L.L.C.*, 26 F.4th 285, 294 (5th Cir. 2022).

Turning back to the issue of Helena not qualifying as an "individual" under § 362(k)(1), Courts which hold an artificial entity does not qualify as an "individual" under § 362(k)(1) have allowed such entities to recover damages in the form of costs and attorney's fees under § 105(a). See *In re Pace*, 67 F.3d 187 (9th Cir. 1995) (damages not otherwise available to Chapter 7 Trustee under § 362(k) for a debtor's willful violation of the automatic stay were nevertheless available under § 105(a) as a sanction for ordinary contempt) and *In re Chateaugay Corp.*, 920 F.2d at 187 (holding that contempt proceedings are the proper means of compensation and punishment for entities harmed by a willful violation of the automatic stay). Attorney's fees may be awarded as a civil contempt sanction to compensate the aggrieved party, and such award is proper even for parties who are not natural persons. *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1554 (11th Cir. 1996). Further, the Court may award such attorney's fees even where the plaintiff has not suffered any other compensable harm. See *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977)

("[T]he cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party . . . .").

In the Fifth Circuit, a finding of civil contempt requires clear and convincing evidence that (i) a court order was in effect, (ii) the order required certain conduct by the non-moving party, and (iii) the non-moving party failed to comply with the order. *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 400 (5th Cir. 1987)). As Helena properly noted in its argument, the automatic stay is a self-executing injunction and, thus, deemed to be an order of the court enforceable by contempt. *In re Sayeh*, 445 B.R. 19 (Bankr. D. Mass. 2011).[10] Section 362(a) of the Bankruptcy Code provides, in relevant part, that "a petition under section 301, 302, or 303 of this title … operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . ." 11 U.S.C. § 362(a)(1), (3). The automatic stay is effective at the filing of the bankruptcy petition.

---

[10] Helena relies upon the Massachusetts Bankruptcy Court's decision in *In re Sayeh*, 445 B.R. 19 (Bankr. D. Mass. 2011) to make its argument. There, the court found that the Chapter 7 trustee, though not an individual within the meaning of § 362(k)(1), could recover attorney's fees under § 105(a) for the debtor's willful violation of the automatic stay. *Id*. at 27. Specifically, the court stated that establishing contempt of the automatic stay required the Trustee to prove by clear and convincing evidence that (i) the alleged contemnor had knowledge of the automatic stay, (ii) committed an act that violated the stay with general intent to commit the act, and (iii) the relevant provisions defining the scope of the automatic stay are clear and unambiguous as to whether the conduct at issue is prohibited. *Id*. at 28. Finding that the debtor knew that he had been dispossessed of control over the assets he sold in violation of § 362(a)(3) by virtue of filing a petition and the appointment of a trustee, the court concluded that there was clear and convincing evidence that the debtor was aware of the relevant provisions of the stay and understood that they enjoined him from taking such action. *Id*. at 28-29. Accordingly, the court imposed compensatory sanctions against the debtor in the amount of fees and expenses incurred by the estate because of his conduct, payable to the Trustee on behalf of the estate. *Id*. at 29. See also*, In re Sherrit*, 669 B.R. 184 (Bankr. E.D. Mich. 2025) (concluding that a Chapter 7 Trustee, who is not an "individual" within the meaning of § 362(k)(1), could recover attorney's fees under § 105(a) to remedy a willful violation of the automatic stay).

*In re Okedokun*, 593 B.R. 469, 525 (Bankr. S.D. Tex. 2018) (internal citations omitted). In the Fifth

Circuit, a claim for violation of the automatic stay is present when: (1) the defendant [knew] of the

existence of the automatic stay; (2) the defendant's acts [were] intentional; and (3) the defendant's

acts . . . violated the stay. *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 302 (5th Cir. 2005).

As discussed at length in the Court's Summary Judgment Opinion in this case, the

Defendants' willfully violated the automatic stay upon the execution and recording of the quitclaim

deed transferring the Home Place in June 2019.[11] Defendant Mary Lou Dilworth, conceded at the

trial on damages held on June 16, 2025, that she knew all four of her brothers, the Debtors, had

filed for bankruptcy and the automatic stay was in place at the time of that transfer. The four

Debtors filed their bankruptcy cases in 2016, effectuating the automatic stay almost three years

before this transfer. A willful violation of the automatic stay merely requires the acts which violated

the stay to be intentional not a specific intent to violate the stay. *Chesnut*, 422 F.3d at 302.

The Defendants have admitted in depositions or interrogatory responses in this case that

the act of transferring the Home Place was intentional and done with the purpose of taking care of

Odelle and/or protecting Odelle's ability to receive rental income derived from the Home Place.

Moreover, the Defendants do not contend that their actions did not constitute a willful violation of

the stay in their brief or at the hearing on this issue. Thus, the Defendants willfully violated the

automatic stay, which operates as an order of this Court. The automatic stay required any person

---

[11] As discussed in the Summary Judgment Opinion, the evidence presented to this Court at the summary judgment hearing indicates that the Defendants acted to transfer the Home Place in response to Helena's earlier related adversary proceeding, A.P. No. 19-01011-SDM, that sought to determine whether the Debtors' vested remainder interests were property of the bankruptcy estate. That case was stayed pursuant to an Agreed Order (A.P. Dkt. #56) in 2023, and again pursuant to an Order entered by this Court (A.P. Dkt. #63) because the resolution hinges on the final resolution of the instant related adversary proceedings concerning the automatic stay violation.

or entity, including the Defendants, to refrain from taking "any act to obtain possession of property of the estate or to exercise control over property of the estate . . . ." 11 U.S.C. § 362(a)(1), (3). By willfully violating that automatic stay, the Defendants failed to comply with an order of this Court.

Accordingly, the Court finds that the Defendants contemptuously violated the automatic stay. They exercised control over property of the Debtors' bankruptcy estates to protect their own interests, not to protect or preserve the property for the benefit of creditors generally. As such, the Court will award Helena its reasonable attorney's fees incurred in prosecuting Defendants' violation under § 105(a), notwithstanding Helena's failure to prove other compensable harm from the violation. See *Cook*, 559 F.2d at 272.

### D.  Helena's Requested Costs and Attorney's Fees are Reasonable.

As described above, the Defendants' actions constitute a willful violation of the automatic stay and, thus, contempt of court. Therefore, Helena is entitled to damages arising out of the Defendants' violation. The purpose of this Court's limited civil contempt power is to coerce compliance with an order of the Court or to compensate a party for the contemptor's violation. See *In re Wilson*, 610 B.R. at 279. Damages made available to parties harmed by a willful violation under § 362(k) include the compensatory damages a party can recover in an action for contempt of court under § 105. See *In re Reed*, 616 B.R. 77 (Bankr. N.D. Miss. 2020) (quoting *In re Adams*, 516 B.R. 361 (Bankr. S.D. Miss. 2014)).

The measure of compensatory damages that a party who successfully shows all three elements of a willful violation of the automatic stay may recover is that party's actual damages, including costs and attorney's fees. See 11 U.S.C. § 362(k). As such, the Court's traditional

calculation of damages pursuant to § 362(k) is sufficient for the entirety of Helena's damages awarded under § 105. *In re Adams*, 516 B.R. at 370.[12]

A party may recover reasonable attorney's fees and expenses incurred in prosecuting an action under § 362(k). *Id*. The Fifth Circuit provides a framework for bankruptcy courts to follow when determining the reasonableness of requested attorney's fees. First, the Court must calculate the amount of the lodestar, which is "equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *CRG Partners Group, L.L.C. v. Neary (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 655 (5th Cir. 2012) (citing *In re Lawler*, 807 F.2d 1207, 1211 (5th Cir. 1987); *In re On-Site Fuel Service, Inc.*, 627 B.R. 644, 657 (Bankr. S.D. Miss. 2021) ("Under the lodestar method, a court first determines the compensable hours billed and then calculates a reasonable hourly rate for the compensable services . . . the resulting sums are multiplied to arrive at the lodestar amount.").

Once the Court arrives at the lodestar amount, the court may adjust the lodestar amount either up or down based on the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The Johnson factors are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[12] Although not raised by the liable parties, i.e., the Defendants in the related adversary proceeding, out of precaution, the Court thought it necessary to discuss the reasonableness of the allowed attorney's fees because of the willful automatic stay violation. This is true even though the attorney's fee award is not being assessed against the bankruptcy estate.

*Johnson*, 488 F.2d at 717-19. Bankruptcy courts have "considerable discretion" when determining whether an upward or downward adjustment of the lodestar is warranted. *Pilgrim's Pride*, 690 F.3d at 656 (citing *In re Cahill*, 428 F.3d 536, 540 (5th Cir. 2005). However, this Court notes that the presumption that the lodestar method provides a reasonable fee is a "strong one," as cautioned by the United States Supreme Court in *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010).

After considering the standards governing attorney's fee awards under § 330 and the twelve Johnson factors, the Court turns to the reasonableness of Helena's requested compensation. In reviewing the Application (Dkt. #801) and the supporting documentation (Dkt. #801-2), the Court conducted a detailed review of each billing entry. The following tables summarize the adjustments and rationale for the fees and expenses allowed.

**Table 1. Summary of Adjustments to Attorney's Fees and Expenses**

| Category | Amount Requested | Adjustments | Amount Allowed |
|---|---|---|---|
| Attorney's Fees | $94,908.00 | −$5,844.50 (see Table 2 for detail) | $89,063.50 |
| Expenses | $1,888.00 | +$32.00 (previously omitted expense) | $1,920.00 |
| Total Compensation | $96,796.00 | Net reduction $5,812.50 | $90,983.50 |

**Table 2. Breakdown of Fee Reductions and Adjustments**

| Reduction Category | Basis for Adjustment | Amount Reduced |
|---|---|---|
| Balance Forward Error | Entry dated 12/19/2022 included a $5,077.00 balance forward; corrected. | $5,077.00 |
| Non-Adversary-Related Work | Entries not directly related to the adversary proceeding (property sales, MORs, motions to borrow, etc.). | $767.50 |

| Calculation or Entry Errors | Minor mathematical corrections or duplications in billing entries. | Included in total reductions |
|---|---|---|

Upon review, the Court finds these adjustments appropriate and necessary to ensure that only work directly related to the prosecution of this adversary proceeding is compensated. For further explanation, and in addition to correcting mathematical and clerical billing errors, the Court also disallowed $767.50 in time entries that were not reasonably related to the prosecution of this adversary proceeding. Those entries included work associated with general case administration, such as reviewing borrowing orders, reviewing monthly operating reports, and corresponding with outside counsel regarding real property sales and plan modifications.

Specifically, the Court disallowed: (1) a 1.2-hour entry on April 6, 2021, for review of memos and an order related to borrowing motions ($210.00); (2) entries on September 16 and 17, 2021, involving communications with outside counsel regarding the sale of real estate and release of deeds of trust ($97.50 total); (3) a June 29, 2022, entry that included 1.1 hours of work on unrelated plan modification matters ($220.00); (4) a partially disallowed June 29, 2022, entry for time spent reviewing emails and orders unrelated to the adversary proceeding ($80.00); (5) a July 6, 2022, entry regarding proposed agreed orders in the main case ($120.00); and (6) a September 1, 2022, entry for review of six Monthly Operating Reports ($240.00). These tasks, while related to Helena's general creditor interests in the bankruptcy cases, did not advance the claims or prosecution of this specific adversary proceeding and are therefore not compensable in this

context.[13] The balance-forward correction represents the most significant reduction, with additional modest adjustments for unrelated work and minor calculation errors. The Court also allowed an additional $32.00 in expenses that were properly documented but omitted from the initial application. Accordingly, the Court concludes that the sum of $89,063.50 in attorney's fees and $1,920.00 in expenses, for a total of $90,983.50, constitutes reasonable compensation for services rendered and costs incurred in connection with Helena's prosecution of the automatic stay violation.

## IV.  CONCLUSION

Based on the above, the Court agrees with the prevailing view among circuit and lower courts that attorney's fees are expressly included in the "actual damages" recoverable by a party injured by a willful violation of the automatic stay under § 362(k)(1). However, in line with the majority interpretation of the term "individual" in that section, the Court finds that § 362(k)(1) does not extend its remedy to corporate entities such as Helena. Accordingly, Helena is not entitled to recover damages under that provision.

Nonetheless, the Court finds that the Defendants contemptuously violated the automatic stay, an order of this Court, by executing the transfer of the Home Place in June 2019. Under § 105(a), the Court has the authority to impose civil contempt sanctions to compensate for the harm caused by that willful violation. Based on the evidence presented and the Court's detailed review

---

[13] The Court notes that one time entry dated January 4, 2023, listed on page 38 of Dkt. #801-2, was reviewed and allowed, even though it involved review of a fee application filed in the underlying case. The entry: ".60 hours by BTG at $200/hour for reviewing a fee application and related notices," was found to include work performed by the Debtor's attorney directly related to the adversary proceeding and is, therefore, compensable.

Page 24 of 25

of the fee application and billing records, Helena is entitled to recover its reasonable attorney's fees and expenses incurred in prosecuting this stay violation in the total amount of $90,983.50.

It is, therefore, **ORDERED** that the *Application for Allowance of Compensation for Violation of the Automatic Stay* (Dkt. #801), is **APPROVED IN PART** and **DISAPPROVED IN PART**. A similar opinion and order will be entered in two other bankruptcy cases of William Cary Hood, Case No. 16-14506, and Howard Allen Hood, Case No. 16-14509, where the same applications are pending. Further, a separate final order on damages and judgment consistent with this opinion and order will be entered in all related adversary proceedings, Adv. Pro. No. 19-01065-SDM, Adv. Pro. No. 21-01008, and Adv. Pro. No. 21-01007.

##END OF ORDER##